The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Theresa B. Stephenson, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and following in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit 1 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On December 4, 1997, an employment relationship existed between plaintiff to and Thetford Property Management.
3. On December 4, 1997, Legion Insurance Company was the carrier at risk with Managed Care, USA, as its servicing agent.
4. The average weekly wage is to be determined.
5. Just prior to the hearing, defendants informed the Full Commission they would accept plaintiff's claim of an injury by accident on December 4, 1997 as compensable.
6. Plaintiff's medicals regarding this claim are admitted into evidence.
7. The post-hearing depositions of Dr. John Smid and Ron Alford are admitted into evidence.
8. The issue to be determined by this hearing are what benefits, if any, is plaintiff entitled as a result of his December 4, 1997 compensable injury.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On December 4, 1997 plaintiff was 39 years old and was employed by Thetford Property Management as a supervisor of maintenance. This job entailed picking up trash, trimming bushes, maintaining apartment property buildings and grounds as well as ordering needed supplies and other paperwork. Plaintiff was hired at the end of 1995. While working for Thetford plaintiff was also pursuing his education by taking night classes at a community college.
2. On December 4, 1997 plaintiff was at work painting some steps. Plaintiff backed down the steps holding paint can with his left hand. The drop cloth slipped and plaintiff tumbled backwards, landing on his left knee. Due to a previous injury with his right knee, plaintiff was attempting to protect that knee as he fell.
3. As a result of plaintiff's fall, his left knee was hurting, and he went home. Plaintiff's left knee popped when standing and his knee appeared puffy. Plaintiff immediately went back to work and informed his supervisor why he was limping.
4. When plaintiff's knee continued swelling, plaintiff sought treatment on December 12, 1997 with Dr. John A. Smid of Scotland Orthopedics. Dr. Smid's initial diagnosis was an injury to the patella femoral joint of plaintiff's left knee. Dr. Smid also diagnosed chrondromalcia, or softening of the cartilage.
5. As a result of plaintiff's compensable knee injury, plaintiff was unable to work or earn wages from the date of accident on December 4, 1997 through February 16, 1998. Plaintiff was released to return to work by Dr. Smid on February 17, 1998. A steroid injection had improved plaintiff's knee and the swelling had improved.
6. Plaintiff returned to work without restrictions on the February 17, 1998. However, he began having sudden sharp pain in his knee when walking up steps or uphill and sought treatment with Dr. Smid on April 14, 1998 with these complaints. Dr. Smid recommended a MRI, but none was performed at that time since defendants had not accepted the claim and were not directing medical care.
7. Plaintiff continued working and his knee pain became progressively worse. On April 29, 1999 he again sought treatment from Dr. Smid and he appeared more symptomatic. Dr. Smid ordered a MRI which revealed some evidence of irritation to the patella.
8. Plaintiff continued working through May 24, 1999 and underwent left knee arthroscopy by Dr. Smid on May 25, 1999. The surgery revealed an articular defect on the medial femoral condyle and a tear of the posterior horn of the lateral meniscus. A partial chondroplasty was performed in an attempt to keep the cartilage injury from propagating. A partial lateral meniscectomy was performed as well. This surgery was a direct result of plaintiff's compensable injuries.
9. Plaintiff's knee generally improved after the surgery. However, on June 9, 1999 plaintiff awoke with severe pain and swelling in the knee. The knee was aspirated but a culture revealed no infection.
10. Plaintiff continued treatment and on September 27, 1999 he was rated with twenty percent (20%) permanent partial disability impairment to his left knee.
11. Plaintiff attempted to return to work for Thetford Property Management but was not allowed to because he was not at one hundred percent. Climbing stairs, ladders, or any activity where he would carry significant weight caused pain to plaintiff's knee.
12. Plaintiff searched for work but no company would take him with his knee restrictions. Plaintiff had attended evening business courses at Sandhills Community College while employed at Thetford Property Management. When plaintiff was unable to return to Thetford Property Management or find alternate employment, plaintiff began attending college from 8:00 a.m. to noon. Plaintiff's school schedule did not hinder plaintiff's job search. At the time of the hearing before Deputy Commissioner, plaintiff's job searches had not been successful and he was still unemployed.
13. Plaintiff received six weeks short-term disability from Thetford Property Management. Plaintiff also received twenty-six weeks unemployment at $248.00 per week.
14. On April 29, 2000 plaintiff met with Ron Alford, a vocational rehabilitation counselor. Mr. Alford did not review plaintiff's medical records but did have a note from an adjuster giving Dr. Smid's restrictions. Mr. Alford did a transferable skills analysis and evaluated some labor market information. Although Mr. Alford gave an opinion there were jobs available for plaintiff, the Full Commission gives the opinion little weight since there was no functional capacity examination; and Mr. Alford did not know the plaintiff's current physical abilities at the time. Also, Mr. Alford did not obtain any specific job descriptions or review the jobs on site which were advertised. Mr. Alford did not engage in any active job search and does not know if the employers in the advertised jobs he listed would actually hire plaintiff.
15. Plaintiff's last visit of record to Dr. Smid was April 19, 2000. Plaintiff reported some pain in his knee on a daily basis. Dr. Smid recommended an unloading brace for the medial aspect of the left knee. The plaintiff will also require periodic check-ups and replacement braces as needed in the future.
16. Plaintiff's average weekly wage on December 4, 1997 was $440.00 resulting in a compensation rate of $293.35 per week.
17. Plaintiff continues to be unable to earn wages as a direct result of his compensable injuries. His efforts to find work were reasonable.
18. Defendants' defense of this matter was without reasonable ground. Additionally, this appeal was brought by the insurer and the Industrial Commission by this Opinion and Award orders the insurer to make or to continue payments of benefits to the injured employee. A reasonable fee to plaintiff's attorney for defending this appeal is $1,000.00.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On December 4, 1997 plaintiff sustained a compensable injury to his left knee arising out of and in the course of his employment with Thetford Property Management. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability from December 4, 1997 though February 16, 1998, and from May 25, 1999 and continuing until further Order of the Commission at his compensation rate of $293.35 per week. N.C. Gen. Stat. §§ 97-29; -42.
3. Plaintiff is entitled to have defendants provide all medical treatment arising out of plaintiff's December 4, 1997 compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. In order to prove disability the burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions. i.e. age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). Here, plaintiff has proved that he is capable of some work but he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment.
5. Since defendants defended this matter without reasonable grounds the Full Commission may assess the whole cost of the proceedings including reasonable fees for plaintiff's attorney upon the party who has brought or defended them. N.C. Gen. Stat. § 97-88.1.
6. Since defendants brought this appeal and the Industrial Commission by this decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Industrial Commission may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. By Order issued concurrently with this Opinion and Award, the Full Commission has ordered that defendants shall forthwith pay to plaintiff disability benefits at his compensation rate of $293.35 per week from December 4, 1997 through February 16, 1998, May 25, 1999 through August 25, 1999, and March 27, 2001 through August 1, 2001, with interest at 8 percent thereon from March 24, 2000 on amounts accruing prior to that date and with interest at 8 percent thereon from the period March 27, 2001 through August 1, 2001 from that period until paid. The Full Commission additionally ordered defendants to pay a 10% penalty on all those amounts save interest.
2. Additionally, defendants shall pay to plaintiff temporary total disability benefits at his compensation rate of $293.35 per week from August 25, 1999 until March 27, 2001, and from August 1, 2001 and continuing until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum, and subject to a credit for unemployment benefits plaintiff received and for any short-term disability paid to plaintiff pursuant to a wholly company-funded plan.
2. Defendants shall also pay an amount equal to 25% of all compensation amounts, without deduction from the compensation to be paid to plaintiff, to plaintiff's attorney as reasonable attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 and such amounts are hereby taxed as costs to defendants. The amount which has accrued shall be paid directly to plaintiff's attorney forthwith. Thereafter, at the same time defendants pay every fourth check to plaintiff (and this does NOT mean that defendants do not make weekly payments of compensation to plaintiff) they shall pay a like amount directly to plaintiff's attorney.
3. Defendants shall also pay $1,000.00 directly to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury for as long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
5. Defendants shall pay the costs.
This 13th day of December 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________ CHRIS SCOTT COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER